UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SHIRLEY A. J.,[1]<br><br>    Plaintiff,<br><br>            v.<br><br>MARTIN O'MALLEY,[2]<br>Commissioner of Social Security,<br><br>    Defendant. | CASE NO. 3:23-CV-00113-MGG |

**OPINION AND ORDER**

This matter is before the Court for judicial review of a final decision of the defendant Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying the application of the Plaintiff Patricia A. P. ("Ms. J") for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). Section 405(g) of the Act provides, *inter alia*, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the finding and decision complained are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." Additionally, here, this Court may enter a ruling based on the parties' consent pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.
[2] Martin O'Malley was sworn into the office of Commissioner of Social Security on December 20, 2023, and he is substituted as Defendant is his official capacity as Commissioner.

I.  STANDARD OF REVIEW

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months…" 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). It is not sufficient for a plaintiff to demonstrate that an impairment exists. Rather, the plaintiff must establish that the impairment is severe enough to prevent him from engaging in substantial gainful activity. *Gotshaw v. Ribicoff,* 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 945 (1963), *Garcia v. Califano,* 463 F.Supp. 1098 (N.D. Ill. 1979). Thus, the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson,* 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen,* 425 F.2d 20 (7th 1970).

The court's role in reviewing Social Security cases is limited. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008). The court must uphold the decision of the Administrative Law Judge ("ALJ") so long as it is supported by substantial evidence. *Thomas v. Colvin,* 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue,* 573 F.3d 503, 513 (7th Cir. 2009)). Although "the threshold for such evidentiary sufficiency is not high," substantial evidence still requires "more than a mere scintilla." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). It means

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001) (internal citation and quotation marks omitted).

However, the deference for the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 708-09 (7th Cir. 2013). Additionally, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007).

When reviewing the Commissioner's findings under Section 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). If, however, an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## II. OVERVIEW OF THE CASE

In the present matter, Ms. J applied for DIB on January 22, 2021, and she alleged a disability onset date of July 20, 2018. Ms. J's applications were denied initially on May 5, 2021, and upon reconsideration on July 15, 2021. After a hearing on February 2, 2022, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since July 20, 2018, the alleged onset date (20 CFR 404.1571 *et. seq.*).

3. The claimant has the following severe impairments: bilateral knee osteoarthritis; chronic obstructive pulmonary disease (COPD); obesity; anxiety; and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: the claimant can lift/carry 20 pounds occasionally and 10 pounds

frequently. The claimant can sit for 6 hours of an eight-hour workday. The claimant can stand/walk for 4 hours of eight-hour workday. The claimant can frequently balance and stoop. The claimant can occasionally crouch, kneel, and climb ramps and stairs. The claimant can never crawl. The claimant can never climb ladders, ropes, or scaffolds. The claimant can frequently handle/finger bilaterally. The claimant can occasionally push/pull with upper and lower extremities. The claimant is limited to occasional and concentrated exposure to hazards, slippery, wet surfaces, moving machinery and unprotected heights, as well as dusts, fumes, odors, gases, and pulmonary irritants. The claimant can understand, remember, and carry out detailed, but not complex tasks. The claimant can maintain adequate attention/concentration for said tasks. The claimant can interact appropriately with supervisors. She can have superficial interaction with coworkers. She would work best independently of others or in small groups of 3-4. The claimant requires work free of fast paced production and quota, meaning no tandem work assignments, machine regulated work, or hourly production requirements. The claimant can manage occasional changes the work environment.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 18, 1971 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has a limited education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant

>   numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969 and 416.969a).[3]
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from July 20, 2018, through the date of this decision (20 CFR 404.1520(g)).

[DE 11, at 21 – 29]. Based on the above findings, the ALJ rendered an unfavorable decision on April 29, 2022 [*id.* at 30], which led to the present appeal.

## III.   LEGAL ANALYSIS

Plaintiff filed her opening brief on July 12, 2023. [DE 14]. On September 26, 2023, the defendant filed a memorandum in support of the Commissioner's decision [DE 18], to which Plaintiff replied on October 10, 2023. [DE 19]. Upon full review of the record in this cause and for the reasons discussed below, the decision of the Commissioner should be reversed and remanded**.**

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen,* 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert,* 482 U.S. 137, 140-41 (1987). The five-step inquiry under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her residual

---

[3] Based on the testimony of the vocational expert, Ms. J would be able to perform the requirements of the following representative occupations: Sorter (DOT# 222.687-022) with 100,000 jobs nationally and Inspector, Hand Packager (DOT# 559.687-074) with 8,000 jobs nationally [DE 11, at 29].

functional capacity (RFC)[4]; and (5) whether the claimant is capable of performing other work. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at every step except the fifth. *Clifford*, 227 F.3d at 868.

In support of remand, Ms. J asserted the following arguments: (1) the RFC was not supported by substantial evidence because the ALJ failed to adequately explain how the evidence led to her conclusions; and (2) the analysis of the Plaintiff's subjective symptoms was legally insufficient because the ALJ's conclusions were not entirely consistent with the evidence. [DE 14, at 7-22]. The Court will consider these interrelated arguments with respect to the legal sufficiency of the ALJ's decision.

With respect to the first argument, Plaintiff takes issue with various aspects of the RFC, especially the determination regarding Plaintiff's ability to stand/walk based on her morbid obesity and end stage knee arthritis; use of her hands based on the record of carpal tunnel surgery and recurring problems; and the limitations on concentration, persistence, and pace without adequate explanation. Finding that one of these sub-issues clearly needs to be reversed, the Court will decline to offer an advisory opinion regarding the other arguments and sub-issues raised here because the Commissioner will have a full opportunity to consider those matters on remand.

---

[4] A claimant's residual functional capacity or RFC is "an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citations omitted).

One major problem in this record revolves around the ALJ's analysis of Ms. J's limitations due to carpal tunnel syndrome.[5] The ALJ related the following:

> [T]he claimant testified to a history of carpal tunnel syndrome and COPD. Concerning her carpal tunnel syndrome, the claimant underwent a bilateral release in 2017. Since then, she has continued to experience bouts of numbness, heaviness, and cramping in both hands, equally. This happens randomly throughout the day and can lasts 30 minutes, but also occurs with prolonged use of hands. When not occurring, the claimant provided she is able to button, zip, pick up a coin, as well as can open doors and jars.

[*Id.*, at 25]. The ALJ then "provided manipulative limitations in order to accommodate for the claimant's history of bilateral carpal tunnel syndrome (with release)" [*id.*, at 27], and concluded in crafting her RFC that the Plaintiff "can frequently handle/finger bilaterally." [*Id.*, at 24]. However, the ALJ's decision presents two problems: (1) it provides no explanation on how the ALJ reached that handling/fingering limitation in her RFC; and (2) it is bereft of any medical opinion evidence to support that conclusion.

With respect to the related sub-issues, the Plaintiff presented evidence of a history of bilateral carpal tunnel syndrome and ulnar tunnel syndrome, which were not responsive to conservative treatment or management. [DE 11, at 44]. She also presented evidence of prior surgeries to ameliorate the symptomology relative to carpal tunnel syndrome, as well as evidence of nerve damage cause by those surgeries. [*Id.*].

---

[5] "Carpal tunnel syndrome" is when the median nerve is compressed as it passes through the carpal tunnel in the wrist. The median nerve provides sensory and motor functions to the thumb and 3 middle fingers. If nerve is compressed or irritated, patients experience symptoms. These are the most common symptoms are: (1) weakness when gripping objects with one or both hands; (2) pain or numbness in one or both hands; (3) "pins and needles" feeling in the fingers; (4) swollen feeling in the fingers; (5) burning or tingling in the fingers, especially the thumb and the index and middle fingers; and (6) pain or numbness that is worse at night, interrupting sleep. See, *Carpal Tunnel Syndrome*, www.hopkinsmedicine.org/health/conditions-and-diseases/carpal-tunnel-syndrome.

Moreover, she presented evidence that regular and consistent problem associated with the syndrome, including pain, numbness, and cramping, which impacts her use of both hands for periods of time up to thirty minutes. She reported tingling, numbness, and pain, and the inability to write and to grasp and to grip objects. As described in Ms. J's medical records:

> The patient was diagnosed with bilateral carpal tunnel in 1995 and received bilateral surgery in 2017. She states that she now has nerve damage in bilateral wrists causing her hand to go numb from the pinky finger to the middle finger and extending into the forearm. She reports a buzzing and tingling feeling in bilateral wrists that causes her to have difficulty with gripping and grasping objects.

[*Id.* at 461]. As such, the ALJ's RFC should have included a detailed analysis of the impact of carpal tunnel syndrome on Ms. J's ability to function in the workplace.

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* The RFC is the *most* someone "can do despite their mental and physical limitations." 20 C.F.R. § 404.1545(a)(1) and § 416.945(a)(1); SSR 96-8p(5) (emphasis added). The RFC is crafted based on "all the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p.

When crafting a claimant's RFC, an ALJ must follow a two-step sequential process to determine whether a claimant's symptoms can be accepted as consistent with objective medical evidence and other evidence. First, the ALJ must determine whether there are underlying medically determinable mental or physical impairments that could reasonably be expected to produce the claimant's pain or symptoms. Second, if there are underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. *See* 20 C.F.R. § 416.929(a). The ALJ evaluates the intensity, persistence, and limiting effects of symptoms by considering a claimant's subjective statements and complaints related to their symptoms and pain, as well as any description medical sources and other nonmedical sources provide about how these symptoms affect a claimant's ability to work. *See* 20 C.F.R. § 404.1529(a).

The ALJ must also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence . . . " 20 C.F.R. § 404.1529(c)(4). Accordingly, a claimant's alleged symptoms are determined to diminish their capacity to work "to extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical and other evidence." 20 C.F.R. § 404.1529(c)(4).

The "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts." S.S.R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). This "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." Lothridge v. Saul, 984 F.3d 1227, 1233 (7th Cir. 2021).

Here, despite the ALJ's summary of the evidence relative to Ms. J's carpal tunnel, the decision fails to adequately support and explain the ALJ's conclusions as the relevant RFC limitations. See John L. v. Saul, No. 4:19CV18, 2020 WL 401887, at *12 (N.D. Ind. Jan. 23, 2020) ("the logical bridge is missing here because the ALJ simply did not grapple with much of the evidence in any meaningful way"). Listing or cataloging evidence from the record is not a substitute for analysis or explanation. Smith v. Astrue, No. 09 C 6210, 2011 WL 722539, at *12 (N.D. Ill. Feb. 22, 2011). The ALJ acknowledged the evidence in the record that Ms. J suffered from symptoms of carpal tunnel syndrome but failed to analyze or connect this condition to other evidence in the record in any meaningful way. Instead, the Court is left to wonder about what evidence the ALJ relied upon in crafting her RFC, what weight the ALJ gave to the carpal tunnel evidence in comparison to the other evidence in the record, and what convinced the ALJ to establish a limitation of "frequent handling and fingering."

The case at bar is reminiscent of Hoskins v. Berryhill, No. 1:18cv23, 2018 WL 5262939 (N.D. Ind. Oct. 23, 2018). In Hoskins, the ALJ found that the claimant had numerous severe impairments, including bilateral hand numbness with some paresthesia most consistent with carpal tunnel syndrome and neuropathy of the

bilateral upper extremities. *Id.* at *2. Despite these impairments, the ALJ found that the Plaintiff retained an RFC that permitted "frequent handling and fingering." *Id.* at *2, *4.: Like Ms. J, *Hoskins* argued that, based on the evidence in the record, the ALJ's RFC did not satisfy the logical bridge requirement. *Id.* The court in *Hoskins* agreed, finding that the evidence showed that the claimant clearly had problems with handling and fingering and that substantial evidence did not support the ALJ's RFC in light of these conditions. *Id.* The same deficiency exists in the ALJ's decision here.

Furthermore, an ALJ must rely on medical evidence at every part of the five-step inquiry. For instance, even before developing an RFC, an ALJ's determination as to whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on that issue. *Barnett v. Barnhart,* 381 F.3d 664, 670 (7th Cir. 2004)(citing 20 C.F.R. § 404.1526(b): "Medical equivalence must be based on medical findings....[w]e will also consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence."). *See also*, S.S.R. 96–6P at 3 ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."), *reinstating* S.S.R. 83–19.

As such, it is well established that "an ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford,* 227 F.3d at 870. Likewise, "[an ALJ] may not "play doctor" by using his

own lay opinions to fill evidentiary gaps in the record," *Chase v. Astrue,* 458 F.App'x 553, 557 (7th Cir. 2012), and may not substitute his lay opinion for all other medical sources in the record. *Kara v. Kijakazi*, No. 20-CV-0344-BHL, 2022 WL 4245022, at *2 (E.D. Wis. Sept. 15, 2022). Furthermore, "ALJ's are not permitted to construct a 'middle ground' [RFC] without a proper medical basis." *Norris v. Astrue,* 776 F.Supp.2d 616, 637 (N.D. Ill. 2001). In fact, an ALJ creates reversible error when he engages in a series of speculative independent medical findings that are untethered to professional medical opinion or scrutiny. *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018)("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves").

In January 2017, the SSA adopted new rules for evaluating medical opinion evidence relative to claims filed after March 27, 2017. 82 F.R. 5844, 5869 (1-18-2017). Under the new regulations, "the opinions of treating physicians no longer receive controlling weight." *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022)(citing 20 CFR 416.920c); see also 20 CFR 404.1520c(a)("[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)…") Under the current regulations, the ALJ must consider the following factors: (1) Supportability; Consistency; (3) Relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of treatment relationship, extent of the treatment relationship, and examining relationship; (4) Specialization; and other factors. 20 CFR 404.1520c(c), 416.920c(c). Supportability and consistency are the two most important factors. 20 CFR

404.1520c(b)(2), 416.920c(b)(2). The new regulations eliminate any hierarchy among medical sources, deference to specific medical opinions, and assigning weight to medical opinions, but the ALJ must still articulate "how [he] considered the medical opinions and prior administrative medical findings in [the]claim" and "how persuasive he find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record ." 20 CFR 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).

An ALJ is not required to adopt a specific medical opinion in crafting an RFC. *Tammy M. v. Saul*, No. 2:20CV285, 2021 WL 2451907, at *8 (N.D. Ind. June 16, 2021). However, by not adopting any medical opinion relative to a medical condition, an ALJ can create an evidentiary deficit. *Id. see also Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) (lack of reliance on any physician opinion evidence created an evidentiary deficit); *Pereida v. Saul*, No. 220CV00107RLMSLC, 2021 WL 327517 (N.D. Ind. Jan. 14, 2021), *report and recommendation adopted,* No. 2:20-CV-107 RLM-SLC, 2021 WL 327397 (N.D. Ind. Feb. 1, 2021) ("The ALJ did not provide evidence to explain how he came to the RFC limitations, and the creation of such middle ground without medical evidence to support his decision requires remand").

Yet, this is precisely what the ALJ did here – after rejecting medical opinions as unpersuasive either in whole or in part, she created an evidentiary deficit and proceeded to fashion an RFC supported only by her lay interpretation of medical findings with respect to the impact of carpal tunnel syndrome on the Plaintiff's ability to use her hands in the workplace. Without any medical evidence to rely upon, the ALJ concluded on her own that the Plaintiff had an RFC to "frequently handle/finger

bilaterally." [DE 11, at 24]. The ALJ stated that, "[i]n making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" [*Id.*]. Here, the ALJ consideration of the "medical evidence" was tantamount to playing doctor and resulted in a compromised RFC based on her lay opinion. As such, remand is required as the ALJ "failed to construct the requisite accurate and logical bridge from the evidence to the ALJ's … RFC." *Marianne T. v. Saul*, No. 19 C 6171, 2021 WL 1088322, at *4 U.S. Dist. LEXIS 52725 at *13 (N.D. Ill. Mar. 22, 2021).

Furthermore, the error committed by the ALJ is not harmless. Both jobs identified by the ALJ – Sorter and Inspector, Hand Packager – require a significant amount of handling. See, DICOT (G.P.O.) 222.687.022, 1991 WL 672133, "Routing Clerk" (a/k/a Router or Sorter), and DICOT (G.P.O.) 559.687.074, 1991 WL 683797, "Inspector and Hand Packager." With respect to both positions, the job description indicates:

> Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

1991 WL 672133 and 1991 WL 6837978. Had the ALJ engaged in the proper, detailed analysis of the evidence – which would have included discussion of the medical evidence concerning carpal tunnel syndrome – the ALJ may have found that the Plaintiff was unable to perform either of these jobs and was, therefore, disabled. The ALJ's error invites remand. *See, e.g., Herron v. Shalala*, 19 F.3d 329,

15

334 (7th Cir. 1994)("[T]he ALJ was not free to dismiss [claimant's] hand impairment without explaining why he reached that conclusion 'in a manner sufficient to permit an informed review.'"), citing *Pope v. Shalala*, 998 F.2d 473, 485 (7th Cir. 1993) (*overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999)), and *Ray v. Bowen*, 843 F.2d at 1002 (7th Cir. 1988).

On remand, to avoid an evidentiary deficit, the ALJ should first analyze, in detail, whether each medical expert's opinion of Ms. J's physical and mental limitations is persuasive or unpersuasive. This analysis should be tied to the factors outlined in 20 CFR 404.1520c, and should describe in the requisite detail how the other portions of the record either conflict with or support each expert's opinion and how the opinion is consistent or inconsistent with expert's records. After completing this detailed analysis, if the ALJ still determines that these medical expert opinions are all generally unpersuasive, then the ALJ must fill in the "evidentiary deficit either by seeking further information from [the medical experts] or [by] obtaining the opinions of [another] independent examining physician or medical expert." *Daniels v. Astrue*, 854 F. Supp. 2d 513, 523 (N.D. Ill. 2012); *see also Barnett*, 381 F.3d at 669 (where an ALJ was concerned with the lack of support for a long-term treating physician's opinion, the ALJ should have contacted the doctor for clarification or sought other expert medical opinions, if necessary). Here, the ALJ did not seek clarification from the treating physicians or the agency consultants, and/or did not consult with other medical experts before rendering his decision. This left an unresolved evidentiary deficit at the core of the ALJ's decision, which was not supported by substantial evidence. *Stephanie Z. v. Kijakazi,* No. 20 CV

5808, 2023 WL 2572429, at *4 (N.D. Ill. Mar. 20, 2023)(citing *Ana M.A.A. v. Kijakazi*, 2021 WL 3930103, at *2 (N.D. Ill. 2021)).

For the foregoing reasons, the Courts finds that this matter must be remanded to the Commissioner for further proceedings consistent with the Order.

IV. **CONCLUSION**

For the above reasons, the case is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C § 405(g).

**SO ORDERED** this 29th day of March 2024.

s/ Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge